# Exhibit A

E-FILED
10/4/2022 4:18 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV405332
Reviewed By: A. Tam

1  Grainne Callan (SBN 318962)
2  GRAINNE CALLAN, ESQ.
   1030 E. El Camino Real #374
3  Sunnyvale, CA 94087
   408-982-6224
4
5  Attorney For Plaintiff, Anthony Loek
6
7
8              **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**
9                        **COUNTY OF SANTA CLARA**
10                       **UNLIMITED JURISDICTION**
11
12  ANTHONY LOEK,                          **Case No:** 22CV405332
13          PLAINTIFF,                     **COMPLAINT FOR:**
14      vs.                               1. Disability Discrimination (Gov. Code §
                                              12940, subd. (a))
15  FANATICS, INC.; and DOES 1 through 50, 2. Failure to Engage in an Interactive Process
    inclusive,                               (Gov. Code § 12940, subd. (n))
16                                        3. Failure to Prevent Discrimination
            DEFENDANTS                    4. FEHA Retaliation ((Gov. Code § 12940,
17                                           subd. (h))
                                          5. Intentional Infliction of Emotional Distress
18
    UNLIMITED CIVIL MATTER               **DEMAND FOR A JURY TRIAL**
19
20          Plaintiff ANTHONY LOEK complains of Defendant FANATICS, INC., and

21  DOES 1-50, inclusive, and alleges as follows:

22                       **PARTIES AND JURISDICTION**

23  1.      Plaintiff ANTHONY LOEK ("LOEK" or "PLAINTIFF") is, and at all times relevant hereto

24  was, a competent adult residing in the County of Santa Clara, State of California.

25  2.      PLAINTIFF is informed and believes, and based thereupon alleges, that at all time relevant

26  hereto, FANATICS, INC. ("FANATICS" or "DEFENDANT") was a Florida Corporation until

27  April 19, 2019, and a Delaware Corporation from November 15, 2021, to present with its principal

28  place of business in Jacksonville, FL.   DEFENDANT does business in and maintains retail

**Complaint**                                                          **-1-**

1  locations in Santa Clara County, California.

2  3.      DEFENDANT is subject to Labor Code and other California law including, but not limited

3  to, Cal. Bus. & Prof. Code sections 17200, *et seq*., and the applicable Wage Order(s) issued by the

4  Industrial Welfare Commission.

5  4.      PLAINTIFF is informed and believes, and based thereon alleges, that there exists, and at all

6  time relevant herein has existed, a unity of interest and ownership among DEFENDANTS, such

7  that any separateness and individuality between them have ceased, and are the alter-ego of

8  DEFENDANT, jointly and severally.   Adherence to the fiction of the separate existence of

9  Defendant as an entity distinct from DEFENDANT would permit abuse of any corporate privilege,

10  sanction fraud, and promote injustice.

11  5.      At all times relevant herein, Employers and DOES 1-50 were PLAINTIFF'S employers,

12  joint employers, and/or special employers within the meaning of the Labor Code and Industrial

13  Welfare Commission Order No. 7-2001 and are each an "employer or other person acting on behalf

14  of an employer" as such term is used in Labor Code Section 558, and liable to PLAINTIFF on that

15  basis.

16  6.      The acts and omissions giving rise to liability occurred in San Jose, Santa Clara County,

17  California.

18  7.      PLAINTIFF is ignorant of the true names and capacities of DEFENDANT sued herein as

19  DOES 1-50, inclusive, and therefore sues these DEFENDANTS by such fictitious names.

20  PLAINTIFF will amend this complaint to allege the true names and capacities of these fictitiously

21  named DEFENDANTS when such information is ascertained.

22  8.      PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named

23  DEFENDANTS, DOES 1-50, inclusive, is responsible in some manner for the occurrences herein

24  alleged, and that PLAINTIFF's damages as herein alleged were proximately caused by the

25  aforementioned DEFENDANTS, and each of them.

26  9.      PLAINTIFF is informed and believes and thereon alleges that, at all times herein mentioned

27  each of the DEFENDANTS was the agent and employee of each of the remaining DEFENDANTS

28  and, in doing the things hereinafter alleged, was acting within the course and scope of such agency

and employment.

10.     PLAINTIFF is informed and believes, and based thereupon alleges, that DEFENDANTS, and each of them, including those DEFENDANTS named as DOES 1-50, acted in concert with one another to commit the wrongful acts alleged herein, and aided, abetted, incited, compelled, and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so, including pursuant to Government Code §12940(i).  PLAINTIFF is further informed and believes, and based thereupon alleges, that DEFENDANTS, and each of them, including those DEFENDANTS named as DOES 1-50, and each of them, formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intend to cause and actually causing PLAINTIFF harm.

11.     PLAINTIFF is informed and believes and thereon alleges that, at all times herein mentioned each defendant herein ratified, authorized, knew about, should have known about, and condoned the acts of each and every other defendant.

12.     Whenever and wherever reference is made in this complaint to any act or failure to act by a DEFENDANT or co-DEFENDANT, such allegations and references shall also be deemed to mean the acts and/or failures to act by each DEFENDANT acting individually, jointly, and severally.

## FACTUAL ALLEGATIONS

13.     As set forth above, and throughout this complaint, DEFENDANT engaged in various acts of unfair competition and unlawful and unfair business practices as defined in the UCL, Cal. Bus. & Prof. Code §§17200, *et seq*.

14.     FANATICS is a private employer that is self-described as "the world's largest collection of officially licensed fan gear from all the leagues, teams and players you love."  FANATICS has more than 8,000 employees and claims to be "committed to making a positive impact in the communities where we all live, work, and play."

15.     On or around October 2016, DEFENDANT hired PLAINTIFF, and Levi's Stadium was PLAINTIFF's home base.

16.     PLAINTIFF has been diagnosed with Asperger's Syndrome ("ASD").  PLAINTIFF feels that his ASD proved to be very beneficial to execution of his duties at FANATICS in that once he

mastered a task he then excelled at it through his hyper-focused resilience. He performed so well; he was entrusted to his own kiosk stand and supervised newer employees and volunteers.

17.   FANATICS agreed with PLAINTIFF's assessment as it recognized PLAINTIFF with multiple awards for perfect attendance, providing excellent customer service, and meeting and exceeding sales goals.   He was also awarded Employee of the Month.   PLAINTIFF was anticipating a long career with Fanatics.

18.   On March 13, 2020, a national emergency was declared due to the COVID pandemic and FANATICS sent an email out to employees communicating about the San Jose Sharks and Employee Assistance Program. PLAINTIFF requested clarification based on conflicting news reports. Despite an autoresponder email saying responses are typically provided within 24-26 hours, PLAINTIFF did not receive a response to this email.  Two weeks later he resubmitted the email and FANATICS HR Business Partner Clare Alvarado responded confirming PLAINTIFF was still an employee and would be invited back when normal retail operations resumed.

19.   PLAINTIFF responded to Ms. Alvarado's email requesting a reasonable accommodation of a phone call and submitted additional questions.   Ms. Alvarado provided some answers to PLAINTIFF's questions and assured him he would not need to reapply when the time came.

20.   On January 21, 2021, FANATICS sent another email informing employees that Fanatics and the San Jose Sharks had mutually agreed to end their partnership and as a result PLAINTIFF's, and others, last day with FANATICS would be January 31, 2021.   In this email, FANATICS encouraged team members to go to its website and apply for any open position for which they may be qualified.   PLAINTIFF was told that since he had his badge, any new application would be processed much quicker.

21.   PLAINTIFF understood he had until January 31, 2021, to try to secure his uninterrupted employment with FANATICS.  PLAINTIFF reached out to Ms. Alvarado to see what options were available to him.  He inquired about transferring to a different home base store, including returning to his original home base store with the 49er's location.  Ms. Alvarado told PLAINTIFF he could not return to the 49er's site because he was not union there, even though he was in the union and the Levi Stadium store was his original home base location with FANATICS.

**Complaint**                                                                                           **-4-**

22.     During this conversation, PLAINTIFF reminded Ms. Alvarado that he was a protected class of worker under the ADA.  Ms. Alvarado claimed she was never made aware of PLAINTIFF's protected class, despite FANATICS previously granting reasonable accommodations.  Ms. Alvarado's treatment of Mr. Loek then shifted, she showed her annoyance and irritation with him in her tone and demeanor. She conveyed she had more important things to do than respond to his questions over the phone.

23.     PLAINTIFF was distraught over Ms. Alvarado's treatment, how she was handling his pending loss of employment and how he was being addressed.  PLAINTIFF reported Ms. Alvarado's mistreatment to the DEFENDANT's complaint hotline. PLAINTIFF's complaint consisted of a lack of professionalism from Ms. Alvarado, especially since she was the HR representative assigned to oversee PLAINTIFF's reasonable accommodation. PLAINTIFF has not received any follow up from FANATICS regarding the complaint filed, yet, Ms. Alvarado was aware that this complaint had been filed as she mentioned it on a subsequent call with PLAINTIFF.

24.     In December 2020, the first doses of the COVID-19 vaccine arrived in California. California initially rolled out the vaccine to various segments of the population beginning with the elderly and those most at risk.  Sadly, the distribution did not go smoothly as quantities available were low and numerous errors occurred resulting in vaccines being non-useable.

25.     On or about March 4, 2021, County of Santa Clara Health System wrote a letter authorizing PLAINTIFF receive a vaccination as soon as possible.

26.     On or about March 7, 2021, even though he did not have an appointment, PLAINTIFF went to the Santa Clara 49ers stadium with the intention to get his vaccination. At that time, two picture ids were required to receive a vaccine and PLAINTIFF prepared to comply.  One id he brought with him was his Fanatics badge.  When Mr. Loek arrived at the site, he explained his situation at the check-in table with the Disaster Service Workers (DSWs) and was told to wait to see if there were any no-shows so he could get his vaccine.

27.     While waiting to hear if he could obtain a vaccination, PLAINTIFF engaged in casual conversation with a Landmark Security personnel.  PLAINTIFF explained he had worked at this location previously and asked him if he knew when the stadium would be reopened.  PLAINTIFF

1    then showed his badge to support his statement.  The security guard stated he did not know but
2    offered to ask on the walkie talkie to get an answer.

3    28.    Also, while waiting, PLAINTIFF asked other DSWs in the public parking lot space and
4    check in area about working their current positions, as PLAINTIFF was interested in serving the
5    community by working at a vaccine site.  Similar to his conversation with the security guard,
6    PLAINTIFF showed his county badge, not Fanatics badge, to the DSWs to support his statement
7    about working for the county.  The DSWs he spoke with were unable to answer his specific
8    questions.

9    29.    Eventually someone arrived to answer question submitted over the walkie talkie. This
10   person told PLAINTIFF she thought the venue would reopen during the summer before preseason
11   and then she left.  PLAINTIFF continued waiting for his vaccine opportunity.  PLAINTIFF noticed
12   multiple people being turned away at the check-in table.  He inquired the likelihood of his getting a
13   vaccine that day.  He was told they had run out of vaccines for the day.  So, he left.

14   30.    Ms. Alvarado contacted PLAINTIFF within a few days of this incident saying that someone
15   inside Levi's had complained that he was flashing his expired Fanatics badge multiple times to
16   several people demanding to be let into the stadium.  PLAINTIFF explained that was not true and
17   provided the facts of what occurred.  Ms. Alvarado concluded the call saying she understood his
18   intent was to get a vaccine, the Fanatics badge was being used as a secondary ID, and that
19   PLAINTIFF had not done anything improper.  She further instructed PLAINTIFF that if he
20   returned to the Levi's Stadium for his vaccine to keep his Fanatics badge in his pocket until it was
21   absolutely necessary during the vaccine process.

22   31.    Then on or about April 6, 2021, PLAINTIFF and Ms. Alvarado had a subsequent telephonic
23   conversation.  Ms. Alvarado confirmed the vaccine incident was resolved.  Ms. Alvarado explained
24   she reported back to the anonymous complainant that PLAINTIFF was there to be vaccinated and
25   was not attempting to trespass on the grounds or closed stores.  Ms. Alvarado then informed him
26   that FANATICS positions at Levi's and the rest of the Bay Area would be posted soon and
27   encouraged him to apply.  She assured him that the badge incident would not impact PLAINTIFF's
28   rehiring.  Following this conversation PLAINTIFF applied to several open positions, Ms. Alvarado

confirmed his application was processed on her end and further instructed PLAINTIFF to follow up with the hiring managers directly. PLAINTIFF did as he was instructed.

32.     On or about May 27, 2021, PLAINTIFF left a voicemail to FANATICS Manager Lindsay LoPicolo following up on his application. Within a few hours of leaving this voicemail, Ms. Alvarado called PLAINTIFF and reprimanded him for reaching out to the hiring managers. Ms. Alvarado retroactively attempted to revise her previous directions claiming she did not really mean what she had said. She said that PLAINTIFF's speaking with the managers made them feel "uncomfortable." She then informed PLAINTIFF he was now being placed on a "Do Not Hire" status without any further explanation.

33.     At a follow up call, PLAINTIFF was subsequently informed the reason for the "Do Not Hire" was because of the vaccine incident even though this completely contradicts Ms. Alvarado's previous comments and was made more than 2 months after the incident. Ms. Alvarado then told PLAINTIFF any further conversations would need to be with Fanatics counsel.

34.     After Ms. Alvarado claimed PLAINTIFF was on FANATICS "Do Not Hire" list, he received two subsequent invitations to work for FANATICS again. PLAINTIFF responded affirmatively to both offers only to be denied the opportunity to apply.

35.     PLAINTIFF is informed and believes, and based thereon alleges, that DEFENDANT has engaged in other illegal and wrongful acts, which are currently unknown to PLAINTIFF. Upon discovery of such acts, PLAINTIFF will amend this complaint to allege these unknown illegal and wrongful acts and omissions committed by DEFENDANT.

36.     Pursuant to the Labor Code, California law and applicable Wage Orders, PLAINTIFF is entitled to all damages, unpaid wages, statutory penalties, waiting time penalties, interest and attorney's fees and costs for the illegal and wrongful acts and omissions of DEFENDANT, all as alleged throughout this Complaint.

37.     A Right-to-Sue Letter was timely obtained from the Department of Fair Employment and Housing on September 22, 2022, on behalf of PLAINTIFF. A true and correct copy of this Right-to-Sue Letter is attached hereto as "**EXHIBIT 1**".

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
(Disability Discrimination Gov. Code § 12940(a))

38.     The above-mentioned allegations of this complaint are hereby incorporated by this reference as if fully set forth again herein.

39.     PLAINTIFF had a disability that limited his major life activity.

40.     DEFENDANT knew of PLAINTIFF's disability that limited his major life activity.

41.     PLAINTIFF's disability was the motivating reason for DEFENDANT's discrimination against PLAINTIFF in terms, conditions, or privileges of employment, as alleged above in violation of Government Code section 12940, subdivision (a).

42.     Further, DEFENDANT's employment practices and/or policies had a disproportionate effect on disabled persons such as PLAINTIFF, in violation of Government Code section 12940, subdivision (a).

43.     As a proximate result of the wrongful acts of DEFENDANT, PLAINTIFF has been harmed in that he has suffered and will continue to suffer actual, consequential, and incidental financial losses, including without limitation loss of income, salary, and benefits, and the intangible loss of employment related opportunities for growth in his field and damage to his professional reputation, all in an amount according to proof at the time of trial.

44.     As a proximate result of the wrongful acts of DEFENDANT, PLAINTIFF has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional distress. PLAINTIFF has experienced emotional, mental, and physical symptoms arising from the wrongful acts of defendant and has required medical attention and treatment for said symptoms. PLAINTIFF is informed and believes and thereon alleges that he will continue to experience emotional and physical suffering for a period of time in the future he cannot presently ascertain. PLAINTIFF has suffered past, present, and future damages in an amount to be shown according to proof at the time of trial.

45.     As a proximate result of the wrongful acts of DEFENDANT PLAINTIFF has been forced to hire Grainne Callan, Esq. to prosecute his claims herein and has incurred and is expected to continue to incur attorney's fees and costs in connection with this lawsuit. Accordingly,

PLAINTIFF request attorney's fees and costs under Government Code section 12965, subdivision (b).

46.     The above recited actions of DEFENDANT were done with malice and oppression and in reckless disregard of PLAINTIFF's rights under the Fair Employment and Housing Act ("FEHA"), in that DEFENDANT engaged in such despicable conduct in order to cause injury to PLAINTIFF and to subject him to cruel and unjust hardship and conscious disregard of his rights. Moreover, DEFENDANT and each of its acts and omissions in continuing, confirming, and ratifying said conduct, was done with the knowledge that PLAINTIFF's emotional and physical distress would thereby increase, and with a wanton and reckless disregard of the consequences to PLAINTIFF. Thus, an award of punitive damages in an amount to be determined at trial is justified against DEFENDANT.

## SECOND CAUSE OF ACTION
(Failure to Engage in an Interactive Process Gov. Code § 12940(n))

As a second, separate and distinct cause of action, PLAINTIFF complains against DEFENDANTS, and each of them, and for a cause of action alleges:

47.     The above-mentioned allegations of this complaint are hereby incorporated by this reference as if fully set forth again herein.

48.     PLAINTIFF had a disability that limited his major life activity.

49.     DEFENDANT knew of PLAINTIFF's disability that limited his major life activity.

50.     DEFENDANT failed to engage in a timely, good faith, interactive process with PLAINTIFF to determine effective reasonable accommodations.

51.     As a proximate result of the wrongful acts of DEFENDANT, PLAINTIFF has been harmed in that he has suffered and will continue to suffer actual, consequential, and incidental financial losses, including without limitation loss of income, salary, and benefits, and the intangible loss of employment related opportunities for growth in his field and damage to his professional reputation, all in an amount according to proof at the time of trial.

52.     As a proximate result of the wrongful acts of DEFENDANT, PLAINTIFF has suffered and continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional

**Complaint**                                                                    **-9-**

distress. PLAINTIFF has experienced emotional, mental, and physical symptoms arising from the wrongful acts of defendant and has required medical attention and treatment for said symptoms. PLAINTIFF is informed and believes and thereon alleges that he will continue to experience emotional and physical suffering for a period of time in the future he cannot presently ascertain. PLAINTIFF has suffered past, present, and future damages in an amount to be shown according to proof at the time of trial.

53.     As a proximate result of the wrongful acts of DEFENDANT PLAINTIFF has been forced to hire Grainne Callan, Esq. to prosecute his claims herein and has incurred and is expected to continue to incur attorney's fees and costs in connection with this lawsuit. Accordingly, PLAINTIFF request attorney's fees and costs under Government Code section 12965, subdivision (b).

54.     DEFENDANT's above-recited actions were done with malice and oppression and in reckless disregard of PLAINTIFF's rights under the Fair Employment and Housing Act ("FEHA"), in that DEFENDANT engaged in such despicable conduct in order to cause injury to PLAINTIFF and to subject him to cruel and unjust hardship and conscious disregard of his rights. Moreover, DEFENDANT and each of its acts and omissions in continuing, confirming, and ratifying said conduct, was done with the knowledge that PLAINTIFF's emotional and physical distress would thereby increase, and with a wanton and reckless disregard of the consequences to PLAINTIFF. Thus, an award of punitive damages in an amount to be determined at trial is justified against DEFENDANT.

## THIRD CAUSE OF ACTION
(Failure to Prevent Discrimination - Gov. Code§ 12940 (k))

As a third, separate and distinct cause of action, PLAINTIFF complains against DEFENDANTS, and each of them, and for a cause of action alleges:

55.     The above-mentioned allegations of this complaint are hereby incorporated by this reference as if fully set forth again herein.

56.     Before the discriminatory treatment, as alleged above, DEFENDANT failed to take all reasonable steps to prevent such discrimination from occurring. Thus, DEFENDANT conduct

1  violated Government Code section 12940, subdivision (k).

2  57.    As a proximate result of the wrongful acts of DEFENDANT, PLAINTIFF has suffered and

3  continues to suffer anxiety, worry, embarrassment, humiliation, mental anguish, and emotional

4  distress. PLAINTIFF has experienced emotional, mental, and physical symptoms arising from the

5  wrongful acts of defendant and has required medical attention and treatment for said symptoms.

6  PLAINTIFF is informed and believes and thereon alleges that he will continue to experience

7  emotional and physical suffering for a period of time in the future he cannot presently ascertain.

8  PLAINTIFF has suffered past, present, and future damages in an amount to be shown according to

9  proof at the time of trial.

10  58.    The above-recited actions of DEFENDANT were done with malice and oppression and in

11  reckless disregard of PLAINTIFF's rights under the Fair Employment and Housing Act ("FEHA"),

12  in that DEFENDANT engaged in such despicable conduct in order to cause injury to PLAINTIFF

13  and to subject him to cruel and unjust hardship and conscious disregard of his rights. Moreover,

14  DEFENDANT and each of its acts and omissions in continuing, confirming, and ratifying said

15  conduct, was done with the knowledge that PLAINTIFF's emotional and physical distress would

16  thereby increase, and with a wanton and reckless disregard of the consequences to PLAINTIFF.

17  Thus, an award of punitive damages in an amount to be determined at trial is justified against

18  DEFENDANT.

19  59.    As a result of DEFENDANT's wrongful acts, PLAINTIFF has been forced to hire Grainne

20  Callan, Esq. to prosecute his claims herein and has incurred and is expected to continue to incur

21  attorney's fees and costs in connection with this lawsuit. Accordingly, PLAINTIFF request

22  attorney's fees and costs under Government Code section 12965, subdivision (b).

23                              **FOURTH CAUSE OF ACTION**
24                           (FEHA Retaliation- Gov. Code§ 12940 (h))

25          As a fourth, separate and distinct cause of action, PLAINTIFF complains against

26  DEFENDANTS, and each of them, and for a cause of action alleges:

27  60.    The above-mentioned allegations of this complaint are hereby incorporated by this reference

28  as if fully set forth again herein.

**Complaint**                                                                        **-11-**

61.     PLAINTIFF exercised his rights as protected by the California Fair Employment and Housing Act by: (1) requesting a reasonable accommodation, (2) filing a complaint against Clare Alvarado. PLAINTIFF alleges that DEFENDANT retaliated against him for exercising his rights in violation of government Code section 12940, subdivision (h).

62.     DEFENDANT's conduct was a substantial factor in causing PLAINTIFF's harm.  As an actual and proximate result of the aforementioned violations, PLAINTIFF has been harmed in an amount according to proof, but in an amount in excess of the jurisdiction of this Court.

**FIFTH CAUSE OF ACTION**
Intentional Infliction of Emotional Distress

As a fifth, separate and distinct cause of action, PLAINTIFF complains against DEFENDANTS, and each of them, and for a cause of action alleges:

63.     DEFENDANT's intentional conduct, as set forth herein, was extreme and outrageous.

64.     DEFENDANT intended to cause PLAINTIFF to suffer extreme emotional distress. PLAINTIFF did suffer extreme emotional distress as a result of DEFENDANT's actions.

65.     As a direct, foreseeable, and proximate result of DEFENDANT's conduct, PLAINTIFF has sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. PLAINTIFF has sought to mitigate these damages.

66.     As a further direct, foreseeable, and proximate result of DEFENDANT's conduct, PLAINTIFF has suffered and continues to suffer humiliation, emotional distress, loss of reputation, mental and physical pain, and anguish, all to his damage in a sum to be established according to proof.

**PRAYER**

WHEREFORE, PLAINTIFF prays for and demands judgment against DEFENDANT and any others Defendants who may be later added to this action as follows:

1.     For compensatory damages, including, but not limited to lost wages and noneconomic damages in an amount according to proof;

2.     For special damages, according to proof;

1    3.      For punitive damages, according to proof;

2    4.      For attorneys' fees and cost pursuant to all applicable statutes or legal principles;

3    5.      For prejudgment interest; and

4    6.      For such other and further relief as the court me deem proper.

5    7.      For punitive damages in an amount sufficient to punish DEFENDANT for its wrongful

6    conduct alleged herein and to deter such conduct in the future;

7

8    DATED:  September 29, 2022                GRAINNE CALLAN, ESQ.

9

10                                    By: _____

11                                        GRAINNE M. CALLAN
                                          Attorney for PLAINTIFF
12                                        ANTHONY LOEK

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Complaint**                                                              **-13-**

EXHIBIT 1



STATE OF CAL FORNIA | Business  Consumer Services and Housing Agency                          GAVIN NEWSOM  GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                  KEVIN KISH, D RECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

September 22, 2022

Anthony Loek

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 202209-18327922
        Right to Sue: Loek / Fanatics, Inc

Dear Anthony Loek:

This letter informs you that the above-referenced complaint filed with the Department of Fair Employment and Housing (DFEH) has been closed effective September 22, 2022 because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section 12965, subdivision (b), a civil action may be brought under the provisions of the Fair Employment and Housing Act against the person, employer, labor organization or employment agency named in the above-referenced complaint. The civil action must be filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation Pilot Program. Under this program, established under Government Code section 12945.21, a small employer with 5 -19 employees, charged with violation of the California Family Rights Act, Government Code section 12945.2, has the right to participate in DFEH's free mediation program. Under this program both the employee requesting an immediate right to sue and the employer charged with the violation may request that all parties participate in DFEH's free mediation program. The employee is required to contact the Department's Dispute Resolution Division prior to filing a civil action and must also indicate whether they are requesting mediation. The employee is prohibited from filing a civil action unless the Department does not initiate mediation within the time period specified in section 12945.21, subdivision (b) (4), or until the mediation is complete or is unsuccessful. The employee's statute of limitations to file a civil action, including for all related claims not arising under section 12945.2, is tolled from the date the employee contacts the Department regarding the intent to pursue legal action until the mediation is complete or is unsuccessful. Contact DFEH's Small Employer Family Leave Mediation Pilot Program by emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number indicated on the Right to Sue notice.

STATE OF CAL FORNIA | Business  Consumer Services and Housing Agency                                    GAVIN NEWSOM  GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, D RECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing